Thank you, Your Honors. This is Sam Callahan, again, on behalf of Mr. James Pressley. Your Honors, this is a straightforward case of ineffective assistance of counsel. Mr. Pressley's trial lawyer failed to seek suppression of highly inculpatory statements that officers elicited during an un-Mirandized custodial interrogation. This court in Greenwicher said that there are two key questions for deciding whether that exact type of failure requires granting habeas relief. The first question is whether suppression likely would have been granted, and the answer here, as in Greenwicher, is yes. Pressley's interrogation inside a police vehicle in an empty church parking lot miles from his home was custodial under Miranda. It was custodial because an ordinary person in those circumstances would not have felt free to terminate the interrogation and leave. The second question is whether suppressing Mr. Pressley's statements would have had a reasonable probability of changing the outcome of the trial. The answer, again, is yes. The government has not cited any appellate decision holding that a confession to a crime used in trial was not prejudicial. In this case, it is a very poor candidate to be the first. Just as in Greenwicher, Mr. Pressley's statements were devastating evidence and played a central, pervasive role in his trial. Because the undisputed record establishes both deficient performance and prejudice, I ask that the court reverse and to order that the suppression likely would have been granted here. The government agrees that Mr. Pressley was interrogated and that he was not Mirandized, so the only question for purposes of Miranda is whether he was in custody during the interrogation. The test for custody, of course, is whether a reasonable person would have felt that he or she was at liberty to terminate the interrogation and leave, or as Miranda put it, custody if the suspect was deprived of his freedom of action in any significant way. And here, you know, the key facts establishing that Mr. Pressley was in custody under that test, I think are undisputed. These facts come from Lieutenant Christensen's trial testimony, which starts at 199 of the joint appendix, and also from Mr. Pressley's affidavit submitted with this 2255 motion. That's at page 140 of the appendix. And, you know, in all material respects, Mr. Pressley's affidavit hasn't been contested, despite the government's ample opportunity to do so at summary judgment. Mr. Callahan, let me ask you a question, and it goes directly to the issue of counsel's performance. Your position seems to suggest that irrespective of whether counsel believed that his client was telling the truth, he had to put the client on the stand. I mean, this argument is leading, and doesn't that create a problem? I mean, if I represented a client, and I didn't believe the client, I couldn't put that client on the stand if the client had told me things that led me to believe conclusively. I mean, just my own opinion, whether I believed him, but if I knew my client was not telling the truth, are you suggesting that I had to put him on the stand? Well, Your Honor, there is nothing in the record that at all indicates that the basis for counsel failing to file the suppression motion here had to do anything with doubting the facts of what Mr. Pressley relayed to him. The only signal in the record that I've been able to find of counsel's explanation for not filing this was that Pressley, I think the quote is, made these statements on himself, and that suppression therefore wouldn't do any good. That, of course, is just a misunderstanding of Miranda. Every un-Miranda-ized interrogation is going to produce statements on a suspect's self, so to speak. If the government or trial counsel's position was that there was some factual doubt as to what Mr. Pressley had told counsel, you know, summary judgment, of course, would be a great opportunity to have tested that explanation that's currently in the record, but the record's completely empty, and the government did not even bother arguing that this is some sort of strategic judgment or that counsel was doing anything besides misunderstanding Miranda when in declining to file suppression motion here. Yes, Your Honor. Well, could counsel have considered this a problem of leaving his client open to an obstruction of justice? Put him on at the suppression hearing. It just seems to me there's so much going into the calculus that it isn't simply a matter of whether you could prove custody. There are a lot of things that a good lawyer has to weigh in making this determination. Your Honor, I completely understand the concern. The concern, of course, is that lawyers are thinking about a lot of things in making decisions, but just two really important points on this. The first is that Gruninger dealt with a very similar situation where counsel came up with an explanation for not filing a motion to suppress, and counsel said, I thought the motion would have been baseless and explained in an affidavit why that was the case, and this court reviewed the question under Miranda without deference to trial counsel's understanding of the case law and said, no, the motion wasn't baseless. It actually would have succeeded. The reason for that is because it's an objective inquiry, not a subjective one, right? The question is, could a reasonable, not this person, but could a reasonable attorney, and I imagine this happens all the time. In fact, a good reason to believe it does, where a defense lawyer listens to his counsel, listens to his client, and says either, as Judge Keenan first suggested, that it's not true, or more likely that putting them on the stand is going to have negative repercussions, both at an obstruction-type charge at sentencing, but also potentially in cross-examination during trial, and weighs that against the unlikelihood that the court would believe the defendant over the two officers who testified to the contrary, and simply make a strategic decision not to file it. That seems to be an imminently reasonable decision given these circumstances, and we look at that objective inquiry to determine whether it is unreasonable, that so far below the realm that it is ineffective assistance, and I'm agreeing, I think, with Judge Keenan here. What I don't see from you is any explanation of that, that even if you are right, and just pause it for a minute, that you were right that he was in custody, or that you had some evidence that he was in custody, that you can't get over that strategic aspect. Well, Your Honor, a few points there. The first is that I may be missing something. I'm having trouble understanding why Mr. Presley would necessarily need to be cross-examined at trial. If it's purely a suppression issue, this would have been resolved through a pretrial motion to suppress, or Presley would have potentially taken the stand, although I would note that... The question is, is that if you testify in a pretrial hearing, it's not used against you at trial, but if you testify inconsistently at trial, your prior testimony can be used to impeach you on cross-examination. So it's not substantive evidence, but it's impeachment evidence, and if you were going to testify at trial, I'm just saying that it has negative repercussions, both potentially in trial for impeachment purposes and at sentencing for obstruction, and those strategic judgments could lead a very reasonable... In fact, maybe some of the very best lawyers to say, we need not throw a Hail Mary in the first quarter when we know it's not going to work, and it has these negative repercussions that come behind it. Right, and Your Honors, I understand the questions and the purpose of the questions, but I have to just insist, because this court now twice in Tice and in Gruninger has actually looked and said, we demand some sort of record evidence that there was a strategic judgment made here, and when there is no explanation that has anything to do with strategy, when it just is, I thought it wouldn't have done any good, I thought it was baseless, I didn't want to file it because I thought it was a loser, and it wasn't in fact a loser, this court has said that that amounts to ineffective assistance of counsel, and so I think the government had an ample opportunity here to come up with an explanation for counsel's failure to file a motion to suppress here, and what those cases stand for is that we can't now sitting here without any support for the decision hypothesize reasons that counsel may not have done it. Is your position that it's a subjective inquiry, so that we're only looking at whether that was the actual reason that the defense counsel, like in his heart of hearts, believed? I mean, we say all the time it's an objective inquiry, so why would it be a subjective inquiry here, that this was actually in his heart of hearts, you know, the reason that he did what he did. Well, your honor, what I'm looking to in explaining this is Gruninger's explanation of the failure to file a motion to suppress as being a refined version of Strickland, and the reason it's refined is that this court has said now several times that the failure to file a motion with some substance is deficient performance, and so whether or not it's... It may have been in that case, but that's not, you know, I'm sorry, Judge Kenan, that's not universally true, right? I'm confident, or at least let me ask you this, do you think that that is universally true, that the failure to file any motion that has some substance, no matter the negative implications that might result from doing so, is per se ineffective? That's the argument you're making. Well, your honor, I apologize. The next point I was going to make is that I think if counsel did have some actual strategic reason for not doing it, I think what those cases are best understood to say is that there is a presumption that you should try to seek exclusion of highly inculpatory evidence, particularly confessions, but if counsel, of course, says, no, here there actually was a then it still is an objective inquiry. Could an objective lawyer, given the circumstances, choose not to file a motion to suppress? Yes, Judge Kenan. Wasn't really what got the lawyer in trouble the fact that the lawyer was filing the suppression motion late on the first day of trial? Wasn't that a big part of the problem from the panel's, from our court's viewpoint? Not so much that counsel lacked a strategic decision regarding whether to file, but the fact that counsel was trying to do it clearly in violation of the rules. Sure. Your honor, the court did point out that that undercut that this was a strategic choice, but you'll note that the court then went on just in the next paragraph after talking about that. What page, Gruttinger, you're talking about? I'll pull it up right now. I apologize, your honor. Sorry for not having it handier. Okay, I'm looking at page 529 of the decision. And I'm looking at the paragraph that starts, regardless any determination that he could not defend a suppression motion, and then it goes on to describe the circumstances that he failed to file the suppression motion, appears to rest less on informed legal judgment than on a legal misapprehension. And my understanding of that discussion is the court is saying it, you know, evidence in the record of what counsel was thinking. And to go to the question of subjective versus objective, the court is saying the circumstances, of course, go to the objective inquiry. Could a reasonable lawyer in these circumstances decline to file? And we have to have some facts to know what those circumstances were. And here we just don't, there's nothing in the record suggesting any strategy to this decision. And in fact, there's affirmative signals that counsel just thought the motion would fail. And that is not strategy. Gruttinger is very clear on that point. Mr. Callahan. I'm sorry. Go ahead, Judge Traxler, please. Mr. Callahan, this is Judge Traxler. I had, first of all, a question I don't know the answer to, but maybe I should. Did your client in his paperwork that he submitted with his motion for summary judgment state that he told his lawyer the things that are in his affidavit, all of the facts? Your Honor, there's not a particular statement that he relayed every single fact, but he describes having explained the circumstances of the interrogation. Also, Mr. Presley then received the IRS Treasury interview memorandum in discovery and again asked counsel to seek suppression of the statements. The memo, of course, detailed all of the inculpatory statements made and had some information about the location of the interview. I don't think there's any dispute that counsel... But can we presume he told these things to his lawyer? Your Honor, I will... Is there a factual basis for the district court to determine that the allegations and statements he makes in his affidavit were told to his lawyer before trial or during trial? Yes, Your Honor. I would point you to page 142 of the Appendix. Mr. Presley... This is Mr. Presley's affidavit. Mr. Presley's affidavit, he says, I told Wentz about the encounter with the agents and the statement I gave without having counsel present. You know, I think... And again, this affidavit has not been contradicted despite opportunity to do so. So I think the only fair reading of the record is that Mr. Presley informed counsel about the nature of this inquiry. And I should add that... Oh, I'm sorry, Your Honor. No, I was going to say, let me go to my second question. Yes. Your client has come forward with an affidavit and statement that indicated they were believed that he would have a legitimate argument he was not in custody. And my colleagues have told you a whole lot of perfectly legitimate reasons why a defense attorney might elect not to file a motion to suppress. But have they come forward with any reasons? It seems to me that once the plaintiff has met his burden of coming forward with evidence to show they're... He's entitled to judgment that the defendants have to say... The defense lawyer has to say something, give some reason. That's... Your Honor, that is exactly my understanding based on this court's cases as well. And I think the failure to submit any information from counsel or any other evidence in response to the motion for summary judgment with a sworn affidavit here... I'm sorry, in response to the sworn affidavit with his 2255 motion, I think indicates that there really is nothing on the other side here. Not only when it comes to custody, but also to this point about this being a strategic judgment. I see that I've exceeded my time. I apologize. Can I beg the courts indulgence to ask one more question while you're here? And we'll give you time on rebuttal, I'm sure. So why is that? So Judge Traxler posits that the defense lawyer has to say something. If it's an objective inquiry, and maybe it's not, tell me if I'm wrong, but if it's an objective inquiry of what a reasonable lawyer would do, why does it matter what the defense lawyer would say? I mean, if he got up and said, it was Tuesday, it doesn't matter. The point is, is that it's an objective inquiry. And so his subjective belief, even if it was based on a mistake, if an objectively reasonable attorney would have done the same thing, isn't that the inquiry? And so what the defense lawyer has to say, while it might be interesting, is not necessary. So this might be helpful on the sort of subjective versus objective point. I think the confusion might be that, my confusion at least, there has to be some set of facts from which you make the objective judgment. Was this a reasonable decision by trial counsel? The only facts in the record right now indicate that this was not a reasonable decision by trial counsel, because there's no facts suggesting that there was any strategic reason not to seek suppression of this. Highly inculpatory statement. It's a confession. So you have to take those facts and say, would an objective trial lawyer in those circumstances refuse to seek suppression? That's where I think Tyson Gruninger say, absent some explanation, no, it is not a strategic judgment in the sense meant by Strickland. It is unreasonable to fail to seek suppression. Mr. Callahan? Yes, Your Honor. I'd like to follow up, too, on the issue of prejudice and ask you, and you can spend your time on rebuttal dealing with that, too, but we've got a situation here. How do we find a reasonable probability of a different result? I agree with you that confessions are very damning, but here we have a situation of a major drug dealer, the evidence. We have cooperating witnesses. We have testimony from the IRS agent Beers about the defendant's lack of legitimate income. He wasn't filing his tax returns. He was huge amount of cocaine. Witnesses testified involving financial crimes, related financial crimes. So this wasn't a garden variety drug case, if there is such a thing. This was a really much more complex case, and so how do we find a reasonable probability of a different result when there was really overwhelming evidence regarding his participation in this sale of drugs and really very, very deep involvement in the criminal world of drug distribution? Sure, Your Honor, and if I may start answering now, and I can return to this on rebuttal. So you noted at the beginning of your question that confessions are damning generally, but I think what's important here is that the confession was really damning in this individual case, and the government clearly thought so because it used the confession as its absolute central evidence. It put on Lieutenant Christensen early in the case. It was their marquee witness. He walked through the statements in scrupulous detail for dozens of pages of the trial transcript, came back to the statements in closing arguments. It began with them. It cited them as the primary evidence of guilt, especially on count one, which was the overarching charge and the only charge that enabled Mr. Presley to get a life sentence in this case. It told the jury that it could just rely on Presley's statements to find guilt. In other words, like, that was it. You're done, I think was the quote. And then in the very last lines of the rebuttal before the court charged the jury, the government told the jury, quote, Presley admitted it. He admitted he bought the Suburban with drug proceeds. He admitted he was a drug dealer. That's a fact. That was the last thing the jury heard. And we cite several cases, and particularly at page 24 of our reply brief, showing that courts really treat the government's treatment of its own evidence as highly corroborative of prejudice because prejudice is about what the jury heard, not just whether there was other evidence that could have potentially supported a conviction. And just one additional note here beyond the government's own reliance. You'll notice that count one required the government to prove trafficking of powder cocaine. And of course, without Presley's statements, the only other evidence supporting that activity came from cooperating witnesses who there was doubt as to their credibility exposed on cross-examination and a strong signal that the jury doubted that testimony because they also testified against Linda Dawson, who was, of course, acquitted on all counts. So I think that there are very strong signals, far stronger even than cases where this court has found prejudice, like in Gruninger, where there was a victim who testified at trial as to each and every one of the sexual misdeeds of the defendant in that case. And yet the court found prejudice because the confession was so damning. I see that I'm well over time. I apologize if I may. We asked you the questions. I appreciate you. We'll wait to hear again from you on rebuttal. Thank you very much, Your Honor. Okay. We'll next hear from Mr. Ranga Rajan. I practiced this ahead of time. I apologize. Mr. Ranga Rajan. Good afternoon, Your Honors. Bhanu Ranga Rajan on behalf of the United States. Thank you. Your Honors, the government is confident with the outcome of the proceedings in this case, and the court can be too. In our brief, we highlight some of the trial record, but frankly, we could have done a better job for the court on the prejudice prong. And so I'd like to take a moment to highlight the trial record, which demonstrates that even if a motion had been filed and defendant's statement suppressed, there was no reasonable probability that the jury verdict would have been different. The defendant's confession was merely icing on a mountain of evidence. During this trial, which is at docket entries 145 to 152, it is a 1,500-page trial transcript. The government presented evidence on five controlled buys exceeding a quantity of 386 grams of crack cocaine. The testimony in connection with those controlled buys included the two cooperators, Smith and Ripley, a co-conspirator, David Williams. There was audio recordings, video recordings. There was GPS tracking device. There's photographs. In addition to those five controlled buys, the government presented evidence through five co-conspirators, Williams, Taylor, Brown, Ernest McNeil, and Lawrence McNeil. Brown himself testified that the defendant and him purchased together over 100 kilos of powder cocaine. Credibility determinations rest with the jury. The jury found these witnesses credible based on the special verdict form and the quantities they attributed to the defendant. In addition, the government had the defendant's own statements. During the course of Brown's audio recording, where he was trying to set up a consensually monitored purchase with the defendant, that audio recording with the defendant's own voice was played to the jury. They heard the defendant in connection with a drug trafficking offense. In addition, the government presented the testimony of an inmate, Albury, who was in pretrial custody with the defendant. The defendant admitted to Albury that he had been dealing drugs since 1990 in ounce to half kilo amounts. The defendant had told Albury about the supplier, and that his supplier had turned on him. That supplier was Mr. Taylor, who testified at trial. The defendant admitted to Albury that there was video and audio surveillance of his controlled purchases. He also had testimony from Taylor, where the defendant, the day before Taylor testified, had threatened to, I quote, whip his ass because Taylor was testifying against the defendant. You also have Williams, who testified the defendant admitted to dealing with Smith and Ripley, the two cooperating witnesses who set up the controlled purchases. That is just on the drug counts. The money laundering evidence was significant as well, and there was testimony from car dealerships, banks, the IRS agent, financial individuals. There was his tax return information. The defendant's residences, cars, and businesses were linked by all of the testimony to the drug dealing, and corroborated the testimony of Agent Beers, who had done the analysis of the financial records. It is against all of the weight of that evidence his confessions came in, but the government submits to- Excuse me, Ms. Rangarajan. How do you respond to Mr. Callahan's point, though, that the government kept bringing up the fact that he confessed? I mean, this was a big part of the government's argument, so how do we then, and I agree with you, there was a ton of other evidence in the case, but the government elected to place heavy emphasis on his statement, so how do we then decide that this wouldn't have affected the result? During the trial, the government highlighted the defendant's confessions in two places, primarily in Christian's testimony up front, during the course of his testimony, but in closing, the closing was over, I guess the first part of closing was over 30 pages, from pages 261 to 292, and the statement was referenced for maybe three pages, 265 to 66, and 275 of the joint appendix sites, and then in the second part of closing, which covered 13 pages, JA 323 to 336, it's referenced on pages 325 to 326, and then in a paragraph on 336, so yes, the government references it, but the government referenced it in the context of all of the other overwhelming evidence, so the government would submit that the trial record in this case supports the finding that there's absolutely no prejudice from the admission of these statements whatsoever. However, I would also like to turn and spend time on the performance prong of Strickland. Can I ask you to help me understand what the first question is? Maybe I'm wrong, but I think about this as three parts. First, it's about the likelihood of the motion being granted. Second, I think about the tactical decision making or lack thereof, and then third is prejudice, but on the first part, when we're talking about, as I think we've said in Gruninger and other places, that we look at the likelihood that the motion would be granted, or whether it was likely the motion would be granted, and my question is, how do we do that in light of the divergence between the plaintiff's allegations and the police officer's recitation of what happened? Are we asking the question of whether if the, now plaintiff, but if the defendant, the criminal defendant's believed, would the motion be granted, which would be one option, or are we asking in light of the totality of the evidence, is it likely that the motion would be granted, which calls us to weigh the officers and the criminal defendant and make an estimation as to whether it was likely the motion would be granted. What are we doing here? What's the frame that ought to have? I think Strickland counsels the court to look at what the defense counsel knew at the time he was making the decision, so in 2012 to 2014 range, before the trial, and I think if you look at the entire record and overlay that with what the defense counsel knew in 2012-2014, it reflects an objective decision by that counsel not to file a meritorious, a non-meritorious motion, and if I could step back and explain to the court my basis. So the first time in the record that you, that the government or anyone sees these claims of coercion in detail are the 2017-2255 motion by the defendant and his arguments therein. This, we need to step back to 2012. The interview took place August 23, 2012. The defendant is indicted six days later on August 29, 2012. In his attachments to his own 2255, he submits a series of letters that he purportedly sent to his defense counsel back in the time frame 2012-2013. In those letters, one example is JA-45. The defendant sends a letter to defense counsel talking about witnesses at trial. There's no mention of this coercion or this custodial interrogation. He has another JA-161. He attaches an affidavit from his brother, which is dated January, that reflects a January 9, 2013 conversation with defense counsel, and that says, the defense counsel responds, James made the statement on himself and did not think the suppression motion would not do any good. There's JA-57. The defendant sends a letter to defense counsel on February 10, 2013. He says, I feel it would be in my best interest for you to file a suppression hearing, for a suppression hearing. I feel that it is only fair to me to know exactly what other evidence the government have, other than what is in the motion. Yes, he asked for a suppression hearing in the letter, but he doesn't, again, make any reference to coercion, threats, forced testimony, custodial sentence, a custodial situation. JA-56, another letter in March of 2013, there is no mention of suppression issues. This is consistent with the rest of the record, and that this was a voluntary statement to law enforcement in an effort to cooperate. The reason we know that- What do you do with JA-142, where he says, and I get this is after the fact, but he says, in 2012, I told Wentz about the encounter with the agents and the statement I gave, even though I had asked to have my attorney present. So he's alleging, he's making that allegation. He's not saying all the rest of this stuff, all the stuff about coercion. I get your point on that. None of that comes up too late, but at least he's made the allegation here that he claimed he asked for an attorney, and they, at least implicit, is that they refused to give it to him. And that would pivot to basically a strategic decision that you didn't want to go through a suppression motion and a hearing where you would have to put your client on the stand in order to testify, and that's an objective choice by a defense counsel. Makes absolute sense. You don't want to risk perjury. You don't want to risk obstruction of justice. That makes perfect sense as a defense lawyer, but the reason there are- I need to ask you a question. Yes, sir. This is Judge Traktor. I need to ask you a question. It sounds to me like you're asking us to decide as a matter of law that this, Mr. Horner, is not believable. Am I right about that? What I'm asking the court to determine is what did the defense counsel know at the time that he made the decision not to file the motion to suppress? And the government's position is that the defendant did not share these facts that he's now presenting in 2017 to his trial counsel in 2012. And there are other places in the record that supports this. And what is your basis for saying that? If you look at both the- so you have the arraignment, Your Honor, where the defendant is specifically asked, is there any defendant who's not fully and completely satisfied with his attorney's services? The defendant makes no complaint, and that takes place on July 14, 2014. During the course of the trial, the testimony unfolds consistently with the memorandum from the interview for Christensen and Beers. The defendant is present- So, wait a minute. Let me interrupt you a sec. So, if a defendant tells a judge he's satisfied with his counsel, he's foreclosed from ever bringing an ineffective assistance of counsel claim? No, but he was given the opportunity to raise it with the judge, and he didn't. So, you're saying, based on the evidence in the record, we should find, as a matter of law, he's not believable? Yes, Your Honor. The 2017 information was not provided to defense counsel in 2012. And again, there are other places in the record that support this. If I could have a moment, I'll run through them quickly for the court. Okay, but before you do, how can we make that conclusion, as a matter of law, at the summary judgment stage? I mean, don't we have to construe the facts in Mr. Presley's favor? Yes, Your Honor, and I recognize that the court is not supposed to be making credibility determinations on a summary judgment motion. I agree with that, but what the court needs to do is it has to look at the defense counsel's thought process in 2012, and whether what that counsel did in 2012 up until trial, 2014, was reasonable in light of information that counsel had. And I'm submitting to the court that that counsel did not have these details in the 2017, because if you look at how cross-examination unfolded at trial of Beers and Christensen, it only focuses on two people being there. The defendant was present. He was conferring with counsel. He was engaged in his defense. You move forward from trial to the motion to defendant's complaint that he didn't file a suppression motion. You move forward to the sentencing memorandum. He's given new counsel. New counsel steps in. In the sentencing memorandum, they challenge the court's reliance on the defendant's statement, not because it was the subject of a Miranda violation. They argue that it was unreliable. They do the same thing at the sentencing hearing. The defendant is present, and there is no argument ever presented to the district court that it was in violation of his Miranda. It was all a question of whether it was reliable based on the context of the other evidence presented. Based on that entire record, it is reasonable. The decision by the defense counsel in 2012 to 2014 not to file a suppression motion was objectively reasonable. Why wouldn't the most practical thing to do here would be to remand it for an evidentiary hearing and just ask counsel, why didn't you file it? Wouldn't that really resolve things pretty quickly here? That would with respect to the performance prong, but the court has the ability to affirm on the prejudice. I think that the resolves it for the court. When you're resolving something on the prejudice prong, and you're doing it on the credibility of the defendant or lack thereof, as you seem to be doing, at least in part, it seems to me that maybe what we need to do is just see if the lawyer was even thinking about it at the time. Trying to figure out what actually happened these many years ago. If the court has any concerns, that is absolutely the correct course to go, is to remand for an evidentiary hearing on the issue regarding performance. But the court, again, the prejudice prong does not go to the defendant's credibility. There's no credibility determination necessary there, so the court can affirm the dismissal based on that other piece of the Strickland test. The other thing that the court may wish to consider is also the context of this confession. It was that would leave the attorney to reasonably conclude that it was a voluntary statement. According to the agents, they went to his house, asked him to follow them. He follows them 10 miles out of town, gets into a car, makes a statement. When the agents approached the defendant in August of 2012, they had already had the five controlled buys. They already had the audio tape from Antoine Brown. They did not need any additional evidence to arrest the defendant. They could have arrested him. What they wanted, and what is evident, is that they wanted his cooperation against Taylor. They invited him to go, yes, 10 miles out of town, outside the county lines to a church. The reason they asked him to go 10 miles out of town was so no one would see him, because that would undermine cooperation. The defendant agrees to go with him. He goes with and then later changes his mind and doesn't want to cooperate. He goes to trial, he loses, and now he's having remorse. That scenario is something that the trial attorney also had before him. I've got this law enforcement statement. He went with them voluntarily. There is evidence that he voluntarily spoke with them. That would have been part of the information Defense Counsel would have considered in deciding whether or not to file a motion. All of these things play into his objective, reasonable decision making process not to file the motion. Unless the courts have any additional questions for me, I would just say to the court, given the profound importance of the finality of judgments and the highly differential review of trial counsel's decision, combined with the jury verdict, which is supported by substantial evidence separate and apart from defendant's statement to law enforcement, the government would ask the court to affirm the district court's decision. All right, thank you, Mr. McGrath. We'll hear from Mr. Callahan on rebuttal. Yes, thank you, Your Honor. There are quite a few points here, so I'll try to be brief with each. This first point that has come up truly for the first time, not just in this appeal, but at oral argument, this is the first time I'm hearing this argument, that counsel may not have had all the facts to make a suppression motion. There's no basis in the record for this concept. The only thing in the record indicates that Presley told his lawyer about this encounter and asked him to seek suppression, and then the treasury memorandum showed up in discovery, and he asked counsel again to seek suppression. I really don't understand the basis for doubting that counsel had the facts necessary. And, Your Honors, the government made an argument in its motion to dismiss Mr. Presley's motion, that this is a strategic judgment that the court should defer to. It then lost the motion to I just think to do this now, it's a little bit late in the game. But I do want to possibly simplify things, because even taking on its own terms the argument that counsel was making a strategic decision because he may have doubted Presley's account of the facts, our position is that if you take Lieutenant Christensen's description of what happened here, this was a custodial interrogation. I understand that there are some divergences between the sort of language that and how Lieutenant Christensen describes the encounter, but our position has consistently been that the custodial nature of this interrogation is self-evident from how Lieutenant Christensen describes it, I should say. Help me understand that. I took you earlier to say that his affidavit, including the claims that he was followed by a bunch of officers and that there were whatever it was, 20 people around him with guns drawn in the church parking lot, that we had to accept all those things as if they were true. But now you're seeming to say instead, we can just rely on the officer. Help me understand that. Your Honor, yeah, let me be very clear. I think it is black letter law that you have to accept any uncontradicted fact in Mr. Presley's affidavit. It is uncontradicted with any evidence of summary judgment. I'm saying that to the extent you are inclined to defer to this newfound strategy argument about counsel deciding not to file a suppression motion because he doubted Mr. Presley's account, he thought he was potentially committing perjury. I'm saying put aside Mr. Presley's facts and look at what Lieutenant Christensen said. This was a custodial interrogation. They approached him by surprise outside of his home, told him to get in his car, follow them to an empty church parking lot 10 miles away. Can I ask maybe the follow-up to that? Hypothetically, if I disagreed with you, and so if I thought that the officer's rendition was correct, that there was no custody, but under your client's rendition, the 20 officers followed, guns drawn, et cetera, um, you know, threats and the like, that, that it might be custody. What am I left to do at this point, right? I mean, I understand what a trial judge would have done, but at this point in habeas, what, how am I supposed to resolve that? Your Honor, I think the proper course of that situation would be as 2255B requires to order that an evidentiary hearing be held because there would be a material dispute of fact about whether suppression likely would have been granted, which goes both to deficient performance and prejudice. Mr. Callahan, though, how do we find a mountain of evidence here? I mean, there's just a ton of evidence of this defendant's involvement in drug trade. How do we find that there's a reasonable probability of a different result? Are you, are you hitching your argument mainly to different results as to punishment as opposed to different result, um, as to overall guilt? Yeah. So Your Honor, I think at an absolute minimum, there is clear prejudice as to count one of this, of this, um, uh, crime of count one of the multiple counts against him, um, which charged both crack and powder cocaine. Um, you know, the, the laundry list approach to prejudice here, just sort of listing off bits of evidence, um, it sort of belies the fact that there were multiple separate counts of conviction that rested on different evidence. And in fact, the fact that the government views this as one big ball of wax, um, is actually, I think, supportive of prejudice because that's exactly how they presented this case. If you read closing arguments, the confession is the centerpiece. It's Mr. Presley admitted to being guilty as to every bit of conduct we charge. Let me also list a few bits of evidence as to each individual count to support that. And then coming back to the confession at the end to hammer at home. I think that supports that there was prejudice as to each and every account of conviction. It does not undercut it in any way. Um, and, and Your Honor, just to reiterate the point, you know, courts really do look very closely at how the government uses evidence when it comes to prejudice. It is not a sufficiency of the evidence inquiry. Um, you need not find that the outcome is more likely than not different. Um, you know, I think, um, as I mentioned before, the, the undisputed record establishes that, that Presley should be um, uh, an evidentiary hearing is the absolute minimum required, um, under 2255B. And we would ask that the court reverse. Thank you. All right. Thank you very much. I'd like to thank both counsel, Mr. Callahan and Ms. Van Goraal. Um, both done an excellent job here today and the court especially appreciates your, uh, help in assisting us in making this, uh, technology work and allowing us to conduct our business. So thank you very much. And, um, uh, we appreciate your help and participation in good argument. Good afternoon.
judges: Barbara Milano Keenan, Julius N. Richardson, William B. Traxler Jr.